EMELINE P. HAYWARD, Respondent, *v.* BARKER PLACE *et al.,* Appellants.

*Supreme Court, First Department, General Term, November 7, 1889.*

1. *Executor, etc. Devastavit.*—An action may be brought by a remainder-man, in the lifetime of the life tenant, against the former executor for a *devastavit,* and against the life-tenant for alleged over-payments to him.

2. *Same. Parties.*—Where, pending such action, the executor is removed and plaintiff appointed an administratrix with the will annexed, she need not, for the purpose of maintaining the action, be made a party as administratrix.

3. *Same. Liability.*—The executor, in such action, cannot be rendered liable for any more than the proof shows remained in his hands and what had been received by the beneficiary beyond the amount to which he was entitled.

Appeal from a judgment recovered on trial at the special term.

*Ira D. Warren*, for appellants.

*J. K. Hayward*, for respondent.

DANIELS, J.—The action was brought by the plaintiff as a legatee under the will of Susan A. Place, to secure an accounting of and concerning her estate, and the recovery of the amount found to be in the hands of the defendant Barker Place, as executor, and James K. Place as a beneficiary under her will. While the action was pending, proceedings were taken on behalf of the plaintiff as legatee in the surrogate's court of the county of New York, to obtain an accounting from Barker Place, as executor of the estate, and for his removal from his office as executor. This proceeding resulted in securing an accounting, and an order removing him, in case of his failure to give a bond in the sum of twenty thousand dollars in the form required by law of administrators, within five days from the date of the decree. He seems to have failed to provide this bond, and under this clause, and a further direction contained in the decree, his removal from his office became effectual. The plaintiff was afterwards appointed administratrix of the estate with the will annexed, and the moneys directed by the judgment in the action to be paid have been directed to be paid to her in that capacity. But for the purpose of sustaining the action, it was not requisite that she should be made a party to the action as administratrix of the estate with the will annexed, for she was entitled to prosecute it as she had regularly commenced it prior to that appointment to its completion as a legatee of the estate for the purpose of correcting the *devastavit* of the executor, and securing indemnity for his misconduct in the management of the property.

By the will of the testatrix the defendant, James K. Place, who was her husband, was entitled to the rents, issues and

income of the estate, after paying debts, charges, insurance and taxes, for the period of his natural life. And her property, with the exception of her residence, which he was entitled under the will to occupy, was vested in her executors as trustees for the attainment of this result. And after the decease of her surviving husband, then her estate was directed to be divided in equal portions between her three children, or between the survivors of the three, and the children of each of her deceased children. The three children of the testatrix are still living, and they are now the persons who will be immediately entitled to her estate after the decease of her surviving husband, and are consequently the persons in whom the right to redress the maladministration of the estate by the executor was substantially vested at the time when the action was commenced. The other sister declined to join the plaintiff in the prosecution of the action, and was accordingly made a defendant. Letters testament-ary upon the proving of the will were issued by the surrogate to Barker Place and Arthur T. Sullivan, two of the persons nominated in the will as executors and trustees. The other person named for that purpose failed to act as such, and the executor, Arthur T. Sullivan, was afterwards superseded and removed by an order of the surrogate, leaving the control and the management of the estate in the defendant, Barker Place, as sole executor.

It was proved upon the trial, and found by the court, that this executor had not only grossly mismanaged the estate, but had misappropriated a large part of its property and proceeds. And he was justly held liable to account for, and pay over, the funds he had received, and the property which had been misappropriated and misapplied by him, and by the other defendant, James K. Place, acting under his authority, and by reason of his mismanagement and misconduct he was held to be liable in the action in a fiduciary capacity for the sum of $57,105.46, together with interest afterwards accruing upon the amount. And whether his liability has been to

this extent established by the proof is one of the important controverted points in the action.

In arriving at the conclusion that this executor was liable to this extent, the court proceeded as far as it became necessary to do so, upon the decree made in the course of the proceedings in the surrogate's court. And the proceedings before the surrogate, as well as the accounts filed by the executor, have been fully set forth in the case. And they indicate a full and final accounting to have taken place before the surrogate, notwithstanding the reservation in the decree of objections, and exceptions, relating to moneys claimed to have been received on account of a mortgage for $25,000, and moneys collected upon two policies of insurance, at that time in litigation in another court. These objections and exceptions were left undetermined by the surrogate to await the result of such litigation. What this litigation in this manner referred to was, has been no otherwise described in the decree. And whether it was intended to refer to this action, or to an action by the executor in the superior court against Jedediah K. Hayward, the husband of the plaintiff, has been left uncertain. And it does not seem to be important for the disposition of this controversy to endeavor to settle that uncertainty.

The proceeding in the surrogate's court was referred to a referee, who, after hearing the proofs and allegations of the parties, made his report to the surrogate, which in certain important respects was afterwards modified and changed. The referee found a balance due to the executor of $4,789.17. But this was changed by the decision of the surrogate, making additional charges against the executor, and disallowing certain credits allowed by the referee, leaving him chargeable with a deficit of upwards of $17,000 on the 30th of December, 1878, the date to which his accounts were brought down.

And this was all that the surrogate appears to have considered to be necessary by way of correcting and adjusting

the accounts of the executor and ascertaining the amount for which he was still chargeable. And upon the adjudication in this manner made by the surrogate a final decree was made at a special term of the court of common pleas, at that time exercising the powers of the surrogate, against the executor. This decree was made on the 15th of August, 1887. And by the decree it was " ordered, adjudged and decreed, that the said Barker Place shall forthwith pay over to Emeline P. Hayward, as administratrix c. t. a. of the estate of Susan A. Place, deceased, the sum of $24,732.31, together with interest thereon at the rate of six per cent per annum from the 30th of May, 1887." And this was all that the decree required to be paid over by this executor. Further directions were given in the decree declaratory of the consequences of his failure to make this payment. And it was further added to be, " the intent of this decree that the net amount of said trust fund after the settlement of said estate shall amount to double the sum of $24,732.31, together with interest in said double amount from the 30th of May, 1887, and that the same shall belong to Emeline P. Hayward, and Isabel P. Sullivan, before said Barker Place shall have any right or interest therein." On what principle this latter direction was inserted in, and made a part of, the decree does not appear. It has in no manner been explained by the decree itself, and it is probably unimportant to attempt an explanation of it now, inasmuch as the decree itself has directed only the payment by the executor of this sum of $24,732.31. The effect of this direction was an adjudication of the executor's liability to that extent. And so far it was supported by the proceedings which had previously taken place before the surrogate himself. For in those proceedings such an indebtedness appears to have been sustained by the proofs and accounts taken before the surrogate.

The court at special term in the judgment from which the appeal has been brought, has directed the payment by the executor Barker Place of this sum of $24,732.31, with

interest from May 30, 1887, precisely as the decree made in the common pleas directed that to be paid. And so far the direction and adjudication is supported not only by the evidence, but by this decree, which must have a conclusive effect between the plaintiff and the defendant Barker Place.

In addition to the direction for the recovery of this sum of money in this action, the judgment has directed the recovery of further sums amounting in the aggregate to $17,873.15, with interest upon the items composing this sum amounting to $14,500. How this result was reached by the court does not clearly appear, unless it has been done by taking the balance, or deficit in the executor's accounts, as that was found in the proceedings in the surrogate's court, and making that the foundation of a further recovery. That this was the course taken in the action derives support from the fact that the deficit in the executor's accounts on the 30th of December, 1887, was stated in the affidavit of the plaintiff, which was used in the proceeding and apparently not denied, at the sum of $17,764.33. And that with the interest from December 30th, 1878, would constitute substantially the amount for the recovery of which this additional direction was made a part of the judgment.

But neither the proceedings before the surrogate, nor the proof upon the trial warranted this adjudication, for the proceedings before the surrogate brought the executor in debt only to the extent of this sum of $24,732.31 on the 30th of May, 1887. And the items of which the estate itself consisted after allowing the payments which had been legally made by the executor, warranted no such additional recovery as this. The estate itself is shown by the proof upon the trial, as well as in the proceedings before the surrogate, to have consisted of the mortgage for $25,000 already mentioned, upon which was collected by foreclosure the sum of $33,946.29, two lots of land in Harlem for which the sum of $5,742 was received, two policies of life insurance upon which $12,423.15 was received, another mortgage upon

which $1,950 was collected, and other items mentioned in the account of the executor found so far to have been correct, aggregating $3,232.54.

These various sums amount in all to $57,297.98, which was the entire aggregate estate left by the testatrix. Out of that, as the proceedings resulted before the surrogate correcting the findings of the referee, the executor had paid, and was entitled to be credited $35,787.38. He had also paid to Jedediah K. Hayward, the husband of the plaintiff, $5,000 for his services as attorney, a retaining fee of $500, and $3,500 upon a transaction had between them for the disposition of the $25,000 mortgage, making the amount disbursed by the executor $44,781.38, leaving a balance in his hands apparently of no more than $12,512.60, or charging the executor as he was by the surrogate with what he had paid Charles Place, leaving a balance of $13,762.60. This balance, however, is to be increased by adding interest in the several amounts of the estate from the respective times when the amounts were collected, up to and including the making of the surrogate's decree. But the addition of such interest will fail to bring up the balance to such a sum as would justify this additional direction contained in and made a part of this judgment.

As the case is stated to have been made to appear before the surrogate, and to have been affected by his adjudications, a final balance from the whole amount received, after deducting the amount allowed the executor as payments, was stated to be the sum of $17,764.33, upon which the executor was chargeable with interest after the 30th of December, 1878. Taking this as the correct statement of the accounts as they were presented to and sustained before the surrogate, and still no foundation is found for adjudicating a greater liability against the defendant than the amount first mentioned in the judgment of the court.

Included in the further sum directed to be paid was the $3,500 already referred to, which had been received by Jede-

diah K. Hayward. But there was obviously no legal ground upon which the executor could be charged with liability for this sum of money, for it was received and retained by Hayward to reimburse himself for moneys which he had advanced to the estate upon the assignment to him as security of the $25,000 mortgage. And there is no evidence in the case upon which his right to receive and retain that sum of money has in any manner been impeached. He received an assignment of the mortgage, and advanced the sum of $19,000 upon it. And when the amount secured by it was collected, this sum was retained by him towards the liquidation of what remained due to him upon the advancement which he had made. The executor afterwards brought an action in the superior court, endeavoring to recover from Hayward the moneys which had passed into his hands, but it was held that he was not entitled to maintain the action. And if he had no legal right to maintain the action, as it must be assumed he had not from the disposition of the case in the superior court, it seems to follow that there was no legal ground upon which he could be charged with liability for this sum of $3,500. A further item included in the judgment to constitute this additional recovery, is $12,423.15, with interest from the 25th of November, 1875. This was money received by the executor upon two policies of insurance, and it entered into and formed a part of the statement of his accounts before the surrogate. He was charged with it there, and the surrogate's decree proceeded upon the regularity of that charge. And it was by making that charge against him that the balance mentioned in the decree, and first directed to be paid by this judgment, was ascertained. And after using it for that object, it very clearly could not again be used as it was to increase the liability of the executor in the action. The other sum of $1,950 also entered into the proceedings before the surrogate, although forming no part of the charge made by the executor in his accounts against himself. It appears, therefore, from the case, that

the only liability of the executor was for this sum of $24,-732.31. And so far as the judgment exceeds the direction for the recovery of that amount, with interest upon it from the 30th of May, 1887, it is erroneous.

A similar, though not quite so extended a recovery is included in the judgment against the beneficiary in the trust, the defendant, James K. Place. And this has arisen out of the receipts by him of moneys and property of the estate, and the loaning to the executor by Hayward of the sum of $19,-000 on one occasion, and by Fuller, his assignee, of $15,000 on another occasion for the firm of Place & Company. Until the debts of the estate were paid this beneficiary in the trust, who was to receive the rents and profits for the term of his natural life, was entitled to nothing. The estate is stated to have been insolvent. And if such was its character, and the property had been wholly appropriated to the payment of debts, then this beneficiary was entitled to no part of the moneys received by the executor. But whether any, and if any, what amount of other debts exist against the estate than those which have been paid by the executor, has not been made clearly to appear upon the trial. The probability is rather against their existence, and that the balance already appearing in the proceeding before the surrogate of $17,764.-33 has remained after the payment of debts. And upon that balance this defendant was entitled to rents and profits, as that has been directed by the will. But in no event was he entitled to more than that.

It was insisted in support of the action that he was chargeable with the moneys which had been received by Place & Company as the advances obtained upon the mortgage. But the evidence of the plaintiff's witness, Mr. Hayward, is to the effect that James K. Place was not a member of the firm of Place & Company; that he managed the business, and knew about the advancement of the first sum of $19,000 to the firm. But the general partner in this firm was Barker Place, the executor. And he, and not James K. Place, who

was not a menber of the firm, was the person who was primarily liable for this money. The mere circumstance that James K. Place negotiated each of the loans of $19,000 and $15,000 will not render him liable to account to the plaintiff for these sums of money. What he did was more in the capacity of an agent, or broker, than that of a debtor, known to the parties acting with him to be exercising the authority or power of that relation. And that did not create a liability to refund these loans.

It did, however, appear upon the trial that he had received from the executor, as a beneficiary under the will, larger sums of money than he was entitled to claim. And as he was familiar with the condition of the estate, and the manner in which Barker Place, his son, was managing it, he was chargeable with knowledge of the fact that this money was being wrongfully diverted from the capital of the estate, and paid over to him. He was permitted by the executor to collect, for what are known as the Harlem lots, the sum of $5,742.00. This money he was not entitled to, for the extent of his interest was the profits to be derived from it as a part of the trust estate, committed to the possession and control of the executor. He is also shown to have received from the payments made upon the two policies, and from the proceeds of the $25,000 mortgage, and this sum for the Harlem lots, the sum of $17,194.22, which is a greater amount than he was entitled to receive as beneficiary of this estate under the provisions of the will. And for the excess received by him, over and beyond what he was entitled to demand, upon the balance remaining in the hands of the executors, he was liable to account in this action. But the extent of that liability will fall far short of the amount with which he was charged by the judgment which has been entered.

As to the $19,000 advanced to the firm of Place & Company, another objection to the charge made as it was sustained by the judgment arose out of the fact that this money is stated to have been used, in a large degree, for the pur-

pose of paying the debts existing against the estate of the testatrix. According to the evidence of the plaintiff's witness, Mr. Hayward, the firm of Place & Company paid debts of the testatrix to the amount of $10,000, and had become obligated for as much more. And this $19,000 was put into the firm of Place & Company " to reimburse them for their payments of debts after the death of Mrs. Place."

This was probably an overstatement of the amount, for James K. Place, who appears to have had better means for accuracy, stated the amount paid, over and above a further sum which had been received, to be, $16,924.43. And after this sum had been paid out in this manner by the firm, there was no ground upon which James K. Place could be made liable for it, arising out of the circumstance that Barker Place subsequently brought in the payments which he made as a charge against the estate. That act affected the executor alone and not this other defendant. The judgment, so far as it has proceeded against the beneficiary, James K. Place, derives no support whatever from the proceedings before the surrogate. He was not a party to those proceedings, and simply making an affidavit to be used in the course of their prosecution, or defense, did not have the effect of making him a party. On the contrary all that was done appears to have been done for the purpose of securing an accounting from the executor and establishing his indebtedness to the estate. The decree which was made was solely against the executor, and furnished no authority whatever for the judgment so far as it has been directed against the defendant James K. Place.

The management of the estate by each of the persons participating in it reflects no credit upon either of them. And while it is true that both the executor and the beneficiary have misconducted themselves in their acts connected with the estate, they can still be rendered liable by the judgment for no more than the proof shows to have remained in the hands of the executor, and for no more than the beneficiary

has received beyond what he was entitled to. The judgment has transcended these allowances, and in such a manner as to render it impracticable to modify it and thereby restrict it to what appears to be the liability of each of these defendants. It will accordingly be reversed, and a new trial ordered, with costs to the defendants to abide the event.

VAN BRUNT, P. J.—I concur in the opinion of Mr. Justice DANIELS, with the exception that in my opinion the administratrix, as such, was a necessary party under the will laid down in the case of Landon *v.* Townshend, 112 N. Y. 93.

The judgment in this action would be no bar to another by the administratrix with the will annexed, and as the defendants should not be compelled to litigate the questions involved in this action, the administratrix should be made a party so that the judgment will be a final adjudication upon the questions involved.

Judgment reversed and new trial ordered, with costs to defendants to abide the event.

BARRETT, J., concurs.

---

NOTE ON "LIABILITY OF EXECUTOR, ETC., FOR ACTS OF ASSOCIATE."

A joint administrator is not liable for the acts of his co-administrator unless he consents to or joins in them. Nanz *v.* Oakley, 120 N. Y. 84; rev'g, 37 Hun, 495.

One administrator may maintain an action against the sureties on a joint bond for the separate defaults of his co-administrator. Id.

An administrator cannot stand by and see an improper use made of the assets by his co-administrators, and afterwards claim immunity in his official capacity or advantage in his private capacity as next of kin, whether such claim is based upon ignorance of his legal rights or duties, or upon mistake in the acts of his associates, unless he can show that his associates deceived him and purposely concealed the facts which were requisite to a fair understanding of the transactions. Matter of Niles, 113 N. Y. 547. He cannot remain passive, when he knows of the irregular acts of his associates, without coming equally under the judgment of the law for the consequences. Id. He must inform himself with respect to the affairs of the estate, and inquire as to the use which is made of its assets. Id.

Note on " Liability of Executor, etc., for Acts of Associate."

An executor, who takes no active part in the management of the estate, is not liable for a failure of his co-executor in having the funds invested as directed by the will. Cocks *v.* Haviland, 124 N. Y. 426; rev'g 57 Hun, 592.

In charging an executor with liability for a misappropriation of the estate by his co-executor, he should not, where no wrongful intention on his part is shown, be made liable for full legal interest. Wilmerding *v.* McKesson, 105 N. Y. 329. He should be charged only at the rate of five per cent, and without annual rests. Id.

Where the funds of the estate are lawfully received by one of the executors or are originally in his hands, or properly paid to him in due course of administration, and there is nothing to excite suspicion as to the integrity or responsibility of such executor, or to create a belief that the funds have been improperly used or invested in violation of the established rules applicable to such cases, or are unlawfully allowed to remain uninvested, the co-executor, who has not control of the fund, cannot be charged with the wrongful acts or misconduct of his associates. Wilmerding *v.* McKesson, 105 N. Y. 329. But where the circumstances are such as to create a doubt in respect to the safety of the funds, the co-executor is not exonerated from the duty of vigilance in protecting them. Id. If he is merely passive, and simply does not obstruct the collection or receipt of the assets by his associate, he is not liable for the latter's waste. Id. But, where he knows and assents to such misapplication, or negligently suffers his co-executor to receive and waste the estate when he has the means of preventing it by proper care, he becomes liable for the resulting loss. Id.

An administrator is not liable for a devastavit by his co-administrator. Matter of Hall, 45 Hun, 588.

Where one of two or more trustees simply remains passive and does not obstruct the collection by a co-trustee of moneys belonging to the trust fund, he is not liable for his associate's waste. Bruen *v.* Gillet, 115 N. Y. 10. But, if he receives the funds and either delivers them over to his associates or does any act by which they come into the sole possession of the latter or under his control, and but for which he would not have received them, such trustee is liable for any loss resulting from the waste. Id.; Croft *v.* Williams, 88 N. Y. 384.

Where excessive payments are made, or moneys drawn, by one executor, with the consent or acquiescence of the others, out of a fund which has been collected and has come into the possession of such other executors, or the joint possession or control of all, they all become liable, not only to make good to the distributees, on the final distribution, any excess of advances so made, but, at all intermediate stages, to make good all payments which become due or payable, under the provisions of the will, to such distributees. Adair *v.* Brimmer, 74 N. Y. 539. Where an executor, by his negligence, suffers his co-executor to receive and waste the estate, when he has the means of preventing it by proper care, he is liable to the beneficiaries for the waste.

The rule that each of several co-executors is only liable for his own acts,

and cannot be made responsible for the negligence or waste of another, unless he in some manner aided or concurred therein, applies as well where the executors are also trustees. Ormiston *v.* Olcott, 84 N. Y. 339.

Where an executor loaned to his co-executor money, taking his individual note therefor upon the faith of representations of the co-executor that he desired to use the money to pay debts of the estate, and where it appeared that it was not so used, the money loaned was not a proper charge against the estate. Croft *v.* Williams, 88 N. Y. 384. So also, where an executor receives funds of the estate which he delivers to his co-executor who misappropriates them, the former is liable therefor. Id. In Paulding *v.* Sharky, 88 N. Y. 432, the will empowered the executors, three in number, to sell the real estate. They made a sale, all joining in the conveyance. The consideration was paid by check payable to the order of one of the executors. He, in good faith, endorsed and delivered it to a co-executor, who obtained the money thereon. After the death of the latter, and on an accounting of the other executors, they were held not to be liable for the sum so received by their associate. Id.

An executor is bound to exercise due caution and viligance in respect to the approval of, or acquiescence in, the acts of his associates. Earle *v.* Earle, 93 N. Y. 104. If he delivers over to them the whole management of the estate, he is responsible for losses which might have been prevented by reasonable diligence on his part. Id.

Where an executrix has permitted funds of the estate to remain in the control of her co-executors, who were men of supposed large means and integrity, she is not liable for a loss occasioned through the investment of such funds by them in their business without her knowledge. Matter of Cocks, 1 Connoly, 347.

In the absence of his knowledge or consent, an executor, who has paid to his co-executor his individual indebtedness to the estate, is not liable for the latter's misappropriation thereof. Matter of Demarest, 1 Connoly, 200.

Where two executors divided the trust funds and securities between them, and, though the accounts were kept together, each managed his own part of the business, and one of them died insolvent and owing the estate, the other was held not liable for the amount of the loss. Matter of Smith, 39 N. Y. St. Rep. 386. But, where such surviving executor had assented to the use of a sum of money belonging to the estate by his co-executor and took as security therefor a bond which he was obliged to surrender up to the lawful owner, he was held to be liable to the estate for the amount of the loss so incurred. Id.